## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLARK A. WARD, individually, and CAW IMAGING, P.C., an Oklahoma professional corporation, | ) ) ) ) |
| Plaintiffs, | ) ) |
| -vs- | ) )   Case No. CIV-03-1564-F |
| HEALTHSOUTH CORPORATION, a Delaware Corporation; DIAGNOSTIC HEALTH CORPORATION, a Delaware Corporation; RICHARD M. SCRUSHY, an individual, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## O R D E R

Before the court is HealthSouth Corporation's and Diagnostic Health Corporation's Motion for Summary Judgment, filed January 3, 2005 (docket entry no. 85). Plaintiffs filed their brief in opposition to defendants' motion on April 14, 2005 (docket entry no. 105), and defendants replied thereto on April 22, 2005 (docket entry no. 127).[1] Upon due consideration of the parties' submissions, the court makes its determination.

---

[1]On January 26, 2005, plaintiffs filed a Fed. R. Civ. P. 56(f) response to defendants' motion (docket entry no. 89). After reviewing the response, the court scheduled a supplemental scheduling conference for February 17, 2005 in order to set a new schedule to accommodate plaintiffs' concerns discussed in the Rule 56(f) response. At that conference, the court extended plaintiffs' time to respond to defendants' motion until April 12, 2005 (docket entry no. 106). On April 12, 2005, plaintiffs requested an additional extension of two days, or until April 14, 2005, to respond to defendants' motion, which the court granted by order dated April 13, 2005 (docket entry no. 123).

Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Background

On April 8, 2004, plaintiffs, Clark A. Ward and CAW Imaging, P.C., filed a First Amended Complaint against defendants, HealthSouth Corporation, Diagnostic Health Corporation and Richard M. Scrushy.[2] Plaintiff, Clark A. Ward ("Ward"), is a duly licensed physician in Oklahoma and is the sole owner of plaintiff, CAW Imaging, P.C., an Oklahoma professional corporation. See, First Amended Complaint, ¶ 1. Defendant, HealthSouth Corporation ("HealthSouth"), is a Delaware corporation, with its principal place of business in Birmingham, Alabama. HealthSouth owns and operates numerous health care facilities in Oklahoma. Id., ¶ 2; see also, Answer of HealthSouth Corporation to First Amended Complaint, ¶ 2. Defendant, Diagnostic

---

[2]On April 30, 2004, the court entered an order staying this action against defendant, Richard M. Scrushy, pending criminal proceedings in Alabama (docket entry no. 61).

Health Corporation ("DHC"), is a wholly owned subsidiary of HealthSouth. *See*, First Amended Complaint, ¶ 3; Answer of HealthSouth Corporation to First Amended Complaint, ¶ 3; *see also*, Answer and Counterclaim of Diagnostic Health Corporation to Plaintiffs' First Amended Complaint, ¶ 3. According to the amended complaint, DHC is and was at all material times the alter-ego of HealthSouth. DHC and HealthSouth are collectively referred to as HealthSouth in the amended complaint. *See*, First Amended Complaint, ¶ 3. Defendant Richard M. Scrushy ("Scrushy") is an Alabama citizen, who founded HealthSouth and served at all relevant times as a director and as chairman of HealthSouth's board of directors. He also served as chief executive officer of HealthSouth from 1994 until August 27, 2002. *Id.*, ¶ 4.

From early 1998 until April 2000, HealthSouth engaged in discussions with Ward about the purchase of Medical Imaging Center of Oklahoma ("MICO"), a limited partnership owned by Ward and two other individuals. One condition of the purchase was Ward's agreement to provide radiology services for the new center. *See*, First Amended Complaint, ¶ 9; *see also*, Answer of HealthSouth Corporation to First Amended Complaint, ¶ 9; Answer and Counterclaim of Diagnostic Health Corporation to Plaintiffs' First Amended Complaint, ¶ 9; *see also*, Exhibit 2 to defendants' motion, Deposition of Clark A. Ward, p. 67, ll. 23-24; p. 68, ll. 1-7; 12-16.

In summer or fall of 1998, Lecia Pate, a HealthSouth employee, orally communicated to Ward "what HealthSouth or an affiliation with HealthSouth would bring to MICO, in terms of updated, state-of-the-art equipment." *See*, Exhibit 2 to defendants' motion, Deposition of Clark A. Ward, p. 69, ll. 6-9. Ms. Pate identified the MRI, CT, radiography and fluoroscopy as the specific equipment to be updated for the facility. *Id.*, p. 69. ll. 21-25; *see also*, Exhibit 14 to plaintiffs' opposition brief,

Deposition of Lecia Pate (now Willingham), p. 53, ll. 12-15.  In November of 1998, Pate sent a letter to one of Ward's partners enclosing "two scenarios which represent offer options from" HealthSouth.  Both scenarios included "MRI upgraded to Horizon with new coils Year 1."  *See*, Exhibit 12 to plaintiff's opposition brief.  Ward also received a copy of the letter.  *Id.*

In approximately April of 1999, Scrushy approved the purchase of MICO by signing a New Store New Market analysis.  The analysis stated that in Year 1, HealthSouth would "Replace MRI" at a cost of $1,147,870 and in Year 2, HealthSouth would spend another $412,000 upgrading other equipment.  The analysis also contained detailed earnings projections which were dependent upon the purchase of new MRI equipment.  In the analysis, there was a further statement "(Will upgrade year one to Horizon LX)."  *See,* First Amended Complaint, ¶ 10 and Exhibit A thereto.

On April 28, 2000, Ward and CAW Imaging, P.C. entered into a Professional Radiology Services Agreement with HealthSouth relating to the provision of radiology services for the new facility.   Ward also individually executed a Professional Employee Non-Competition Agreement with HealthSouth.  Ward further executed an Asset Purchase Agreement relating to the transfer of assets and assumption of certain liabilities of MICO to HealthSouth.  *See*,  First Amended Complaint, ¶¶ 11A, B, and C and Exhibit B and C thereto; *see also*, Exhibit 1 to defendants' motion and Exhibit 1 and Exhibit 2 to plaintiffs' opposition brief.

At the closing of the transaction, Ms. Pate reiterated to Ward that new equipment would be acquired for the facility.  *See*,  Exhibit 15 to plaintiffs' opposition brief; Deposition of Clark A. Ward, p. 90, ll. 15-25.

According to section 6.4(a) of the Professional Radiology Services Agreement, Ward was to be paid, among other things, an amount equal to 16% of net collections,

as compensation for his radiology services.  *See*, First Amended Complaint, ¶ 12 and Exhibit B thereto.

Plaintiffs allege that the representations with respect to the purchase of the new equipment for the new facility, and the income projections based upon the purchase of the new equipment, were material to Ward and that he relied on these representations in making his decision to execute the agreement with HealthSouth regarding the purchase of MICO.  *See*, First Amended Complaint, ¶ 11.  Ward and CAW Imaging, P.C. allege that Scrushy caused and permitted these representations to be made to Ward knowing that they were false and knowing that HealthSouth would not invest the monies for the new imaging equipment and that the earning projections based upon the purchase of that equipment were therefore grossly inflated and false.  *Id*.  Ward and CAW Imaging, P.C. allege that Scrushy and HealthSouth concealed their fraudulent conduct after the execution of the agreements by claiming to have ordered new MRI equipment and then later canceling the purchase orders due to an alleged breakdown in negotiations.  According to plaintiffs, the concealment lasted well into 2002.  Plaintiffs further allege that the "temporary magnet" which was housed in a trailer in the parking lot was represented to Ward to be "temporary."  *Id*., ¶ 13.

In addition to the promises of new equipment and corresponding revenue increases, Ward alleges that he relied upon the stated earnings of HealthSouth in reaching his decision to execute the agreements with HealthSouth.  The stated earnings were of material importance to Ward in determining whether HealthSouth would honor its promise to purchase the new equipment and in determining whether his prospective employer was financially sound.  *Id*., ¶ 14.  Ward alleges, however, that the stated earnings of HealthSouth were overstated by billions of dollars as a

result of a pervasive and elaborate scheme masterminded by Scrushy and carried out by senior officers and executives. *Id.*, ¶ 15. Senior officers and executives, prior to the end of each quarter, artificially inflated HealthSouth's earnings to match Wall Street's expectations. *Id.*; *see also,* Exhibit 8 to plaintiffs' opposition brief, trial testimony of William T. Owens, pp. 1878-1879. Books and records were falsified by recording phony entries with respect to various HealthSouth accounts. *See*, First Amended Complaint, ¶ 16, Exhibit 9 to plaintiffs' opposition brief, trial testimony of Kenneth K. Livesay, p. 5703.

In the First Amended Complaint, Ward and CAW Imaging, P.C., allege claims against HealthSouth and DHC for fraud, negligence, breach of contract and set-off. They also allege a fraud claim against Scrushy.

As to the fraud claim, Ward and CAW Imaging, P.C., allege that the actions of HealthSouth and Scrushy constitute fraud and further allege that but for the materially false representations concerning the net worth of HealthSouth, the promises that in excess of $1.9 million would be spent for new equipment and the promises and representations as to projected income to be achieved through the purchase of state-of-the-art equipment, Ward would not have entered into the agreements with HealthSouth. Ward and CAW Imaging, P.C., seek actual and punitive damages for the alleged fraud, together with a declaration that the non-compete agreement is void and rescinded. *See*, First Amended Complaint, ¶¶ 24-28.

As to the negligence claim, Ward and CAW Imaging, P.C., allege that the outside directors of HealthSouth had a duty to oversee the conduct of the senior officers and executives. Plaintiffs allege that the outside directors failed and neglected to properly oversee and supervise the actions of the senior officer and executives, and as a result, the fraudulent scheme executed by the senior officers and executives was

6

allowed to continue.  Plaintiffs allege that HealthSouth is vicariously liable for the acts of negligence of the outside directors and seek actual damages for the alleged negligent acts.  *See*, First Amended Complaint, ¶¶ 29-33.

As to the breach of contract claim, Ward and CAW Imaging, P.C., allege that the fraudulent scheme perpetrated by defendants occurred during the term of the Professional Radiology Services Agreement and the non-compete agreement and that the fraud constitutes a material breach of the agreements.  In addition, plaintiffs allege that under the Professional Radiology Services Agreement, HealthSouth was required to provide equipment necessary to assure the proper operation of the imaging center and sufficient to permit plaintiffs to fulfill their obligations under the agreement. Plaintiffs allege that HealthSouth breached the agreement by failing to provide the equipment and by allowing the condition of the equipment to deteriorate.  Plaintiffs allege that the MRI which was ultimately housed in a trailer on the parking lot adversely impacted plaintiffs' ability to perform radiology services.  Plaintiffs seek actual damages in the nature of lost earnings.  *See*, First Amended Complaint, ¶¶ 34-36.    As to the set-off claim, Ward and CAW Imaging, P.C., allege that HealthSouth has made a demand upon them for alleged overpayments under the Professional Radiology Services Agreement.   To the extent any overpayments were made, plaintiffs allege that they are entitled to set-off overpayments from the damages suffered as a result of the alleged fraud, negligence and breach of contract.  *See*, First Amended Complaint, ¶ 37.

With its answer, DHC also filed a counterclaim against plaintiffs alleging four claims for relief, namely, money had and received, accounting, conversion and breach of contract.  DHC specifically alleges that Ward and CAW Imaging, P.C. have received monies which belong to DHC, that they have demanded an accounting from

plaintiffs for the amount of monies received, that plaintiffs have refused to provide such accounting, and that plaintiffs have converted the monies to their own use and benefit. DHC also specifically alleges that Ward and CAW Imaging, P.C. have been and are continuing to provide medical services in breach of the non-compete agreement. DHC seeks actual damages for the breach of the non-compete agreement and an injunction requiring plaintiffs to cease and desist providing medical services in violation of the non-compete agreement.

In their summary judgment motion, HealthSouth and DHC seek judgment in their favor on "all of plaintiffs' (collectively 'Ward') claims." The court notes that defendants have not mentioned or referred to the set-off claim in their briefing. However, the court concludes that if summary judgment is appropriate in on the fraud, negligence and breach of contract claims, there would be no entitlement to set-off in favor of plaintiffs and that summary judgment would also be appropriate on the set-off claim. On the other hand, if the court finds that any of the fraud, negligence and breach of contract claims survive summary judgment, then summary judgment is not appropriate on the set-off claim.

Fraud Claim

HealthSouth and DHC contend that the discussions related to new equipment and the financial information provided by HealthSouth to the § and the public, were not false material statements made to induce Ward to enter into the agreement. With respect to the latter, the financial information, defendants contend that the information was prepared by HealthSouth as part of its duty as a publically traded company. These documents, according to defendants, made no representations, statements or calculations concerning Ward or MICO. Defendants contend that Ward's claim that

8

he was caught up in a grand scheme of false accounting practices is not sufficient to support his claim that he was fraudulently induced to enter the agreements.

As to the new equipment, defendants contend that Ward's rendition of his conversations with Lecia Pate is that she provided him with HealthSouth's "vision" for the new facility which included new equipment. This vision, according to defendants, was only Ms. Pate's belief or opinion as to what HealthSouth might do with the facility at some point in the future and that an expression of opinion and/or discussions of future events or promises intended to be performed do not constitute actionable fraud. Defendants also argue that even if plaintiffs could point to a false representation made by HealthSouth that induced him to enter the agreements, they may not reasonably rely on any such representation to claim fraud because Ward and his counsel read the Professional Radiology Services Agreement before it was signed and were on notice that it was inconsistent with the  representation. Defendants contend that the agreement did not promise to place new equipment in the facility. Defendants contend that Ward was clearly on notice after reading the agreement that it did not require DHC to purchase new equipment.

The court, construing all evidence and reasonable inferences therefrom in favor of plaintiffs, concludes that summary judgment on plaintiffs' fraud claim is not appropriate.   As to the financial information, the court concludes that the fact the information was prepared as part of HealthSouth's duty as a publically traded company, and the fact that the information made no mention of MICO or Ward, does not preclude a finding of liability for fraud. Likewise, the court rejects defendants' contention in their reply brief that the alleged misrepresentation relating to the financial information constitutes "an expression of opinion." *See*, *e.g.*, <u>Bird v. Coleman</u>, 939 P.2d 1123, 1127 (Okla. 1997) ("'In a transaction involving the sale of

stock in a corporation, representations as to the financial condition of the company ... the value of its stock ... made with the view to induce another to subscribe therefor, are representations of matters of fact ... and when relied upon by the purchaser of said stock, if false, constitute actionable fraud.'") (quoting <u>Dalton v. Hopper</u>, 177 P. 571, 573 (Okla. 1919)); *see also*, <u>Dalton</u>, 177 P. at 573 ("'A representation as to value is usually regarded as an expression of opinion, but, where false and made by one as an inducement to another, who is ignorant thereof, to enter into a contract, and is relied upon to the detriment of the latter, may be made the basis of an action for damages consequent upon fraud and misrepresentation.'") (quoting <u>Hood v. Wood</u>, 161 P. 210, 213 (Okla. 1916)); <u>Hood</u>, 161 P. at 213 ("'The financial condition of the company, the volume of its business, the amount of its income and expenses, and what these had been in the past were all matters peculiarly within the knowledge of the appellants, and not easily ascertainable by respondent. We have frequently held that representations as to such matters are representations as to matters of fact, and, if false, and made with knowledge that they were being relied upon by the other party, constitute actionable fraud.'") (quoting <u>Boehme v. Broadway Theater Co.,</u> 157 P. 218, 219-220 (Wash. 1916)).   Viewing the evidence and reasonable inferences therefrom in a light most favorable to plaintiffs, materials reflecting HealthSouth's purported financial status were provided to Ward in the negotiations for the purchase of MICO to induce plaintiffs to enter into the agreement, the financial information that was provided was false, and plaintiffs relied on this financial information in reaching their decision to enter into the agreement.   The court therefore concludes that summary judgment is not appropriate on the fraud claim based on the alleged misrepresentation relating to HealthSouth's financial information.

As to the alleged new equipment misrepresentation, the court rejects defendants' initial contention that the misrepresentation by Ms. Pate was only "an expression of opinion" which cannot form the basis for a fraud claim. Ward's testimony in regard to Ms. Pate's "vision" for the new facility (including state-of-the-art equipment) is not the only evidence in regard to the alleged misrepresentation of new equipment. The alleged misrepresentation was also made in the November, 1998 letter to Dr. Woolard, of which Ward received a copy. The evidence, taken in a light most favorable to Ward, also shows discussions about the new equipment throughout purchase negotiations and at the transaction's closing. And even during the "vision" conversation, Ms. Pate specifically identified the equipment to be purchased, which included the MRI. Furthermore, the New Store New Market analysis, which was approved by Scrushy, also contained the statements that the MRI would be replaced in year 1 and additional equipment would be purchased in year 2. The court concludes that all of the evidence, taken in a light most favorable to plaintiffs, shows that the alleged misrepresentation was more than "an expression of opinion."

As to their second contention, defendants are correct as a general proposition that, for a false representation to form the basis of a fraud claim, the representation must relate to existing facts or those which previously existed, and not to promises as to future acts. Hall v. Edge, 782 P.2d 122, 128, n. 4 (Okla. 1989). However, Oklahoma has recognized an exception to this general rule. Under Oklahoma law, fraud can be predicated upon a promise to do a thing in the future when the intent of the promisor is otherwise. Wagstaff v. Protective Apparel Corp. of America, Inc., 760 F.2d 1074, 1077 (10th Cir. 1985); Furr v. Thomas, 817 P.2d 1268, 1272 (Okla. 1991); Hall, 782 P.2d at 128, n. 4; Citation Co. Realtors, Inc. v. Lyon, 610 P.2d 788, 790 (Okla. 1980). Construing the evidence and reasonable inferences therefrom in a light

most favorable to plaintiffs, the court concludes that the exception to the general rule applies in the case at bar and that the fact that the alleged misrepresentation relates to future events, namely the purchase of MRI in year 1and other equipment in year 2, does not preclude liability for fraud.

The court also rejects defendants' third contention that summary judgment is appropriate because plaintiffs cannot demonstrate reasonable reliance on the alleged oral misrepresentation relating to new equipment.  In support of their contention, defendants specifically cite section 4.1[3] and section 4.2[4] of the Professional Radiology Services Agreement, *see*, exhibit 1 of defendants' motion, p. 6, as precluding reasonable reliance.   Defendants contend that neither section requires DHC to purchase new equipment.  Because Ward and his counsel read the  agreement before

---

[3]Section 4.1 provides in pertinent part:

> DHC shall be responsible, after consultation and advice of PC, for the purchase, replacement, and maintenance in good order of all equipment and adequate stock of inventory and supplies and materials reasonably required to assure the proper operation of the Center and the delivery of Radiology Services at the Center during the term of this Agreement.  PC shall consult with and advise DHC regarding the purchasing, replacement, maintenance and stocking of such equipment, supplies, and materials.

[4]Section 4.2 provides in pertinent part:

> DHC shall, with the consultation, advice and assistance of PC, provide, maintain, and make available at no cost to PC at all times during the term of this Agreement, physical facilities, reasonably sufficient to permit PC to fulfill its obligations under this Agreement. DHC shall acquire and maintain at its expense, throughout the Center, any and all diagnostic imaging equipment meeting the requirements of all applicable laws, and the applicable standards of the American College of Radiology and any recognized accreditation organizations, and the prevailing community standard reasonably sufficient to enable PC to perform the Radiology Services required hereunder.

signing it and were on notice that the alleged oral misrepresentation was inconsistent with the written agreement's terms and conditions, defendants contend that plaintiffs cannot establish the reasonable reliance element of their fraud claim.

In so contending, defendants cite cases standing for the principle that a party cannot claim reasonable reliance on pre-contractual oral representations if that party could have discovered the fraud by reading the contract or by exercising reasonable diligence. *See*, Regensburger v. China Adoption Consultants, Ltd., 138 F.3d 1201, 1207 (7th Cir.1998) ("A party who could have discovered the fraud by reading the contract, and in fact had an opportunity to do so, cannot later be heard to complain that the contractual terms bind her."); Georgia-Pacific Corp. v Lieberam, 959 F.2d 901, 907 (11th Cir. 1992) ("'One having the capacity and opportunity to read a written contract and who signs it, not under any emergency, or whose signature is not obtained by trick or artifice of the other party, cannot afterward set up fraud in the procurement of his signature. . . .'") (quoting Stephens v. Citizens & Southern Nat. Bank, 318 S.E.2d 216, 218 (Ga. App. 1984)); Runnemede Owners, Inc. v. Crest Mortgage Corp., 861 F.2d 1053, 1059 (7th Cir. 1988) (plaintiff did not reasonably rely on oral assurances which were clearly contrary to the contemporaneously executed written contract); Silver v. Slusher, 770 P.2d 878, 881, n. 8 (Okla. 1988) ("An action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence.")   These cases are distinguishable from the case at bar because they involved claims in which the oral fraud was discoverable by reading the terms of the contract or by exercising reasonable diligence.   As noted by defendants, neither section of the agreement contains a representation as to the purchase of new equipment.   No such representation having been made, there is nothing from the language of these sections

that would indicate to plaintiffs that the alleged oral misrepresentation regarding the purchase of new equipment was in fact false.  The cited sections of the agreement do not flatly contradict the alleged oral misrepresentation.  The sections simply indicate that DHC would be responsible for the purchase, replacement and maintenance of equipment.  They do not contain any specifics which would put plaintiffs on notice that DHC was not going to purchase new equipment as represented by Ms. Pate.  The court concludes that the cited sections do no negate the reasonable reliance element of plaintiffs' fraud claim.  The court also concludes that defendants have failed to show that, with reasonable diligence, plaintiffs could have ascertained the truth in regard to the alleged oral misrepresentation as to new equipment.  The court therefore concludes that summary judgment is not appropriate on the fraud claim based upon the alleged misrepresentation relating to the purchase of new equipment.

Negligence Claim

Defendants contend that they are entitled to summary judgment on the negligence claim because plaintiffs cannot show that HealthSouth's outside directors owed a duty to plaintiffs to oversee and supervise the accounting practices of the senior officers and executives.  Defendants contend that HealthSouth's outside directors owed no duty to plaintiffs because plaintiffs were not HealthSouth's shareholders.  Defendants contend that plaintiffs lack standing to bring a negligence action because their action is in reality a shareholder's derivative action.

To the extent that plaintiffs seek to extend the outside directors' duty to shareholders to anyone who enters into a contract with HealthSouth, defendants contend that there is no authority to support such an extension.  And, according to defendants, extending the law to allow non-shareholders to sue a corporation or outside directors for matters relating to accounting or operation of the corporation

would allow any party that enters a contract with a corporation to sue in tort, rather than contract, if that party becomes dissatisfied with the contract.

"In any action based on negligence, the first prerequisite must be to establish the existence of a legally cognizable duty." First Nat. Bank in Durant v. Honey Creek Entertainment Corp., 54 P.3d 100, 105 (Okla. 2002). Whether or not a duty to another exists is a question of law and often depends on the relationship of the parties. *Id.* "The court decides whether a defendant stands in such a relationship to a plaintiff that the defendant owes an obligation of reasonable conduct for the benefit of the plaintiff." Delbrel v. Doenges Bros. Ford, Inc., 913 P.2d 1318, 1320-21 (Okla. 1996).

Having considered plaintiffs' arguments to the contrary, the court is not persuaded that the outside directors owed a duty of care to plaintiffs to oversee and supervise the conduct of the senior officers. There is no special relationship, such as a fiduciary relationship, which existed between plaintiffs and the outside directors. *See*, *e.g.*, Wilson v. Harlow, 860 P.2d 793, 798 (Okla. 1993) (directors of corporation owe fiduciary duty to corporation and its shareholders; directors of corporation owe no duty to customers/ratepayers), *cert. denied*, 510 U.S. 1117 (1994). And there was no written agreement imposing any duty on the part of the outside directors to plaintiffs to oversee or supervise the senior officers and executives. The duty to properly oversee and supervise the senior officers and executives is a duty to the corporation and its shareholders. In addition, the court notes that the basis of the negligence claim against the outside directors is for nonfeasance rather than malfeasance. *See*, First Amended Complaint, ¶ 30 and ¶ 31. There are no allegations of positive wrongdoing by the outside directors. Courts have held that a director is not responsible to third persons for inattention, negligence or other mismanagement amounting merely to nonfeasance and to a breach of a duty owing to the corporation

15

alone.  Newman v. Forward Lands, Inc., 418 F. Supp. 134, 137 (E.D. Pa. 1976).  The court therefore concludes that defendants are entitled to summary judgment on the negligence claim.

Breach of Contract Claim

Defendants contend that summary judgment is appropriate on the breach of contract claim for three reasons.  First, defendants contend that plaintiffs cannot obtain relief against HealthSouth because it was not a party to the agreement.  Next, defendants contend that the oral representation regarding the new radiology equipment cannot support a breach of contract claim because the oral representation was superseded by the written agreement, which does not contain any promise to purchase new radiology equipment.  Third, defendants argue that the radiology equipment, which was provided by DHC, complied with all obligations under the written agreement in that the equipment permitted Ward to perform his radiology services.

The court concludes that plaintiffs have presented sufficient evidence to raise a genuine issue of fact as to whether HealthSouth was the alter ego of DHC.  The court therefore rejects defendants' argument that HealthSouth cannot be held liable for the breach of contract claim because it was not a party to the claim.  In addition, the court finds that plaintiffs have presented sufficient evidence to raise a genuine issue of fact as to whether defendants breached their obligations under sections 4.1 and 4.2 of the Professional Radiology Services Agreement.  See, Exhibit 2 to defendants' motion, Deposition of Clark A. Ward, p. 166, ll. 3-25; p. 167, ll. 1-25; see also, Exhibit 19 to plaintiffs' opposition brief, Memorandum from Mike Rickman to Pat Foster; Exhibit 18 to plaintiffs' opposition brief; e-mail sent Thursday, August 2, 2001, from Matt Price to other HealthSouth employees.  The court concludes that the evidence, construed in a light most favorable to plaintiffs, creates a genuine issue of

fact as to whether the radiology equipment which was provided to the new facility complied with the stated obligations set forth in sections 4.1 and 4.2 of the agreement. *Id*. The court therefore concludes that summary judgment is not appropriate on plaintiffs' breach of contract claim that the equipment provided by defendants did not comply with the stated obligations under sections 4.1 and 4.2 to the Professional Radiology Services Agreement.

To the extent that plaintiffs assert a breach of contract claim based upon defendants' alleged oral promise to purchase new equipment, the court concludes that it cannot adequately address the merits of this claim on the basis of the briefing provided. The parties have not cited cases which support their views as to the viability of such a claim. In support of summary judgment, defendants state:

> Even if HealthSouth made oral representations regarding new radiology equipment, they are not sufficient to support Ward's breach of contract claim because any such statements are superseded by the terms and conditions of the written Agreement that Ward read and signed. (UMF nos. 6 & 7).
>
> The Agreement itself does not require DHC to purchase new radiology equipment to 'assure the effective and efficient performance of Radiology Services by PC at the Center;' and 'reasonably sufficient to enable PC to perform the Radiology Services required hereunder.' (Exhibit "1", page 6, sections 4.1 and 4.2). DHC complied with these provisions.

*See*, defendants' motion, p. 12-13.

Plaintiffs, in response, state:

> Defendants argue that there can be no breach of the agreement by failing to purchase the promised radiology equipment because there is no provision in the agreement regarding such purchase. As shown above, HealthSouth fraudulently induced Ward to sign the Agreement by

17

> promising to purchase such equipment.  The Memo from Mike Rickman
> to Pat Foster establishes Plaintiffs' breach of contract claim, perhaps as
> a matter of law.

*See*, plaintiffs' opposition brief, p. 23.

The court's cursory review of Oklahoma law suggests that there may be some question as to the viability of plaintiffs' breach of contract claim based on the oral promise to purchase new equipment.  *See*, *e.g.,* <u>Seal Oil Co. v. Roberson</u>, 51 P.2d 801, 805 (Okla. 1935) ("[The written contract is the sole depository of the agreement of the parties on all matters which were the objects of their negotiations, and such contract cannot be altered, varied, contradicted, enlarged, narrowed, nor added to by parol testimony, but the written contract must speak for itself, except in case of accident, mistake, or fraud, *when the remedies are other than an action at law for breach of the parol agreement claimed to have been omitted from the written contract*.") (emphasis added); <u>Holcomb  & Hoke Mfg. Co. of Indianapolis, Ind. v. Jones</u>, 228 P. 968 (Okla. 1924) ("A defrauded party cannot treat an alleged misrepresentation as terms of a contract.  Such representations constitute only grounds for avoiding liability under the contract and cannot be a covenant of the instrument itself.").  In the absence of full treatment of the claim by both parties, the court is not inclined to adjudicate this claim at this juncture.  Moreover, the court concludes that defendants have failed to show that they are entitled to judgment as a matter of law on this claim.   The court therefore concludes that summary judgment is not appropriate on the breach of contract claim based on the oral promise to purchase new equipment.

<u>Set-Off Claim</u>

Because the court has determined that summary judgment is not appropriate as to plaintiffs' fraud and breach of contract claims, the court likewise concludes that

summary judgment is not appropriate as to plaintiffs' set-off claim. The set-off claim shall therefore proceed to trial along with the fraud and breach of contract claims.

Conclusion

Based upon the foregoing, Healthsouth Corporation's and Diagnostic Health Corporation's Motion for Summary Judgment, filed January 3, 2005 (docket entry no. 85), is **GRANTED in part** and **DENIED in part**.

DATED this 27th day of June, 2005.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

03-1564p027(pub).wpd

19