```
 1        IN THE UNITED STATES DISTRICT COURT
 2           WESTERN DISTRICT OF OKLAHOMA
 3   CLARK A. WARD              )
     individually, and
 4   CAW IMAGING, P.C.,         )
     an Oklahoma professional
 5   corporation,               )    CASE NO.
 6           Plaintiffs,        )  CIV-03-1564-F
 7   VS.                        )
 8   HEALTHSOUTH CORPORATION,   )  DEPOSITION OF:
     a Delaware Corporation;
 9   DIAGNOSTIC HEALTH          )    ROSA HOOPER
     CORPORATION, a Delaware
10   Corporation; RICHARD. M.   )
     SCRUSHY, an individual,
11                              )
             Defendants.
12                              )
13            S T I P U L A T I O N S
14       IT IS STIPULATED AND AGREED, by and
15   between the parties through their
16   respective counsel, that the deposition
17   of:
18       ROSA HANDLEY HOOPER,
19   may be taken before Carrie M. Robinson,
20   Commissioner and Notary Public, State at
21   Large, at the Law Offices of Balch &
22   Bingham, on the 5th day of April, 2005,
23   commencing at approximately 9:00 a.m.
```

ORIGINAL

BAIN & ASSOCIATES COURT REPORTING SERVICES, INC.



EXHIBIT 6

1  the projections that new MRI and new CT
2  would be purchased, true?
3  A        Yes.
4  Q        And the increase in the volume
5  was dependent upon the purchase of that new
6  equipment, was it not?
7  A        That would be correct.
8  Q        All right.  And let me ask you
9  this:  Are you familiar with -- and these
10 projections that we talked about, is it
11 your understanding that those were
12 communicated to Dr. Ward?
13 A        It is not my understanding.
14 That would not be typical that we could
15 communicate our internal pro formas to the
16 seller.
17 Q        All right.  Well, no question in
18 your mind that the discussion of new
19 equipment was discussed with Dr. Ward,
20 right?
21 A        Yes.
22 Q        And no question but that his
23 compensation was based on collections which

```
 1  in turn were based on volume, correct?
 2  A         Correct.
 3  Q         And no question that the
 4  purchase of new equipment would have an
 5  effect on the volume or would hopefully
 6  have a positive effect on the volume of
 7  scans being performed, correct?
 8  A         Correct.
 9  Q         Isn't that the type of thing
10  that Ms. Pate discussed with Dr. Ward?
11  A         That would certainly be the type
12  of thing that she discussed, but it was not
13  our practice to share our internal pro
14  forma income statements for future periods
15  when it would be HealthSouth's facility.
16  We would not share that with the seller.
17  We would talk -- we would discuss -- it
18  would be our practice to discuss with them
19  the intentions as far as equipment and that
20  type of thing, but not to share our
21  actual -- that's an internal file.
22  Q         Okay.  Do you know, in fact,
23  whether Lecia Pate gave Dr. Ward the
```

```
 1  record, please?
 2  A          It is a letter from Lecia Pate
 3  to Dr. Tom Woolard.  There is no date.
 4  Q          Okay.  Do you understand that
 5  Dr. Woolard was one of the owners of MICO?
 6  A          Yes, I do.
 7  Q          And that letter in a nutshell
 8  contains the -- one of the proposals for
 9  the purchase of MICO, does it not?
10  A          Yes.  It discusses options with
11  the acquisition.
12  Q          Okay.  And in that letter, is
13  the subject of acquiring a new MRI
14  discussed?
15  A          Yes, it is.
16  Q          And what does that letter -- not
17  word-for-word, but in general, what does it
18  state with respect to the new MRI?
19  A          With the installation of the
20  upgrade and new coils, we will likely add
21  one scan per day which brings the volume
22  back to ten.
23  Q          Okay.
```

```
 1  A          They are discussing loss of
 2  volume related to an entity in the market
 3  getting their own MRI.
 4  Q          And so then that document is one
 5  that indeed was communicated to
 6  Dr. Woolard, true?
 7  A          Correct.
 8  Q          And do you see the note on the
 9  top right-hand corner of that document?
10  A          Yes.
11  Q          What does that say?
12  A          It says:  Received by me
13  11-12-98, CW, maybe.
14  Q          Clark Ward, perhaps?
15  A          Yes.  I do not know his writing,
16  but certainly that could be a C.  It could
17  be an A.
18  Q          It certainly wouldn't surprise
19  you if that letter were communicated to
20  Dr. Ward by Dr. Woolard?
21  A          No, it would not.
22  Q          In fact, you would expect it to
23  be, would you not?
```