## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CLARK A. WARD, individually, and )
CAW IMAGING, P.C., an Oklahoma )
professional corporation, )
                       )
           Plaintiff, )
                       )
vs. )    Case No. CIV-03-1564-F
                       )
HEALTHSOUTH CORPORATION, a )
Delaware Corporation; DIAGNOSTIC )
HEALTH CORPORATION, a )
Delaware Corporation; RICHARD M. )
SCRUSHY, an individual, )
                       )
          Defendants. )

## O R D E R

Before the court is Defendant Scrushy's Renewed Motion to Dismiss for Lack of Personal Jurisdiction, filed September 13, 2005 (doc. no. 158).

<u>Procedural History</u>

Plaintiffs, Clark A. Ward and CAW Imaging, P.C., filed their Complaint against defendants, HealthSouth Corporation, Diagnostic Health Corporation and Richard M. Scrushy ("Scrushy"), on November 12, 2003. Thereafter, on December 29, 2003, Scrushy filed a Motion to Dismiss the Complaint or, in the Alternative, to Stay the Action (doc. no. 18). During a hearing held February 19, 2004, the court granted Scrushy's motion, to the extent it sought to dismiss plaintiffs' Complaint against him for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed. R. Civ. P. The court entered an order dismissing plaintiffs' Complaint against Scrushy without prejudice (doc. no. 38).

At the February hearing, plaintiffs' counsel requested leave to amend plaintiffs' Complaint, stating that she believed documentation existed which would demonstrate that Scrushy had engaged in conduct directed at the State of Oklahoma sufficient to vest the court with personal jurisdiction. The court directed plaintiffs to file an application to amend, with their proposed amended complaint, within ten days. On March 4, 2004, plaintiffs filed their Application to Amend Complaint, attaching thereto a proposed First Amended Complaint (doc. no. 40). Scrushy opposed the application (doc. no. 41). On April 7, 2005, the court entered an order granting the application (doc. no. 50). The court rejected Scrushy's arguments that plaintiffs' application was unduly delayed and that the amendment, as proposed, was futile. The court specifically concluded that the new allegations of the proposed amended complaint, which was attached to the application, established a *prima facie* case of personal jurisdiction over Scrushy.

Plaintiffs filed their First Amended Complaint on April 8, 2004 (doc. no. 51). On April 23, 2004, Scrushy filed a motion to stay this action against him pending criminal proceedings in Alabama against him (doc. no. 57). The court held a hearing on the motion and entered an order on April 30, 2004, staying this action against Scrushy (doc. no. 61). Over a year later, on July 26, 2005, plaintiffs filed a motion to lift the stay of proceedings as to Scrushy (doc. no. 139). The court held a hearing on the motion on August 26, 2005, and entered an order lifting the stay on August 30, 2005 (doc. no. 157). In addition, the court granted Scrushy leave to file a renewed Rule 12(b)(2) motion by September 13, 2005. The court advised the parties that if it concluded an evidentiary hearing was necessary, the hearing would be held on October 4, 2005.

Within the time allotted by the court, Scrushy filed the present motion and therein requested an evidentiary hearing. Upon preliminary review of Scrushy's motion and plaintiffs' response, the court concluded that an evidentiary hearing was

necessary (doc. no. 161).  On October 4, 2005, the court conducted the evidentiary hearing as to Scrushy's motion.  At the conclusion of the hearing, the court made some findings of fact and called for post-hearing briefs by the parties.  Plaintiffs filed their post-hearing brief on October 21, 2005, and Scrushy filed his post-hearing brief on November 7, 2005.

Plaintiffs Allegations and Fraud Claim against Scrushy

In the First Amended Complaint, plaintiffs make the following allegations. Plaintiff, Clark A. Ward ("Ward"), is a duly licensed physician in Oklahoma and is the sole owner of plaintiff, CAW Imaging, P.C., an Oklahoma professional corporation.  *See*, First Amended Complaint, ¶ 1.  Defendant, HealthSouth Corporation ("HealthSouth"), is a Delaware corporation, with its principal place of business in Birmingham, Alabama.  HealthSouth owns and operates numerous health care facilities in Oklahoma, *id*., ¶ 2.  Defendant, Diagnostic Health Corporation ("DHC"), is a wholly owned subsidiary of HealthSouth, *id*., ¶ 3. Defendant Scrushy is an Alabama citizen, who founded HealthSouth and served at all relevant times as a director and as chairman of HealthSouth's board of directors.  He also served as chief executive officer of HealthSouth from 1994 until August 27, 2002.  *Id*., ¶ 4.

Beginning in approximately the early part of 1999, HealthSouth approached Ward about purchasing Medical Imaging Center of Oklahoma ("MICO"), a limited partnership owned by Ward and two other individuals.  One condition of the purchase was Ward's agreement to provide radiology services for the new center.  *See*, First Amended Complaint, ¶ 9.  Very early in the negotiations, the parties discussed the need for new MRI equipment in order to stay competitive in the market.  *Id*.

In approximately April of 1999, Scrushy gave his executive approval to purchase MICO by signing a New Store/ New Market analysis.  The analysis stated that in Year 1, HealthSouth would "Replace MRI" at a cost of $1,147,870 and in Year 2, HealthSouth would spend another $412,000 upgrading other equipment.  The

analysis also contained detailed earnings projections which were dependent upon the purchase of new MRI equipment. *See,* First Amended Complaint, ¶ 10. According to plaintiffs, Scrushy executed the document, thereby directing and authorizing his subordinate, Lecia Pate, to represent to Ward that HealthSouth had approved the MICO purchase and had authorized the expenditure of approximately $1.5 million dollars for the purchase of a new MRI. Pate in fact communicated to Ward that the new MRI would be purchased. In addition, she communicated to Ward the income projections which HealthSouth had established, which projections were directly dependent upon the purchase of the new MRI. *Id.*

On April 28, 2000, Ward and CAW Imaging, P.C. entered into a Professional Radiology Services Agreement with HealthSouth. Ward also individually executed a Professional Employee Non-Competition Agreement with HealthSouth. Ward further executed an Asset Purchase Agreement relating to the transfer of assets and assumption of certain liabilities of MICO to HealthSouth. *See,* First Amended Complaint, ¶¶ 11A, B, and C.

According to section 6.4(a) of the Professional Radiology Services Agreement, Ward was to be paid, among other things, an amount equal to 16% of net collections, as compensation for his radiology services. *See,* First Amended Complaint, ¶ 12.

Plaintiffs allege that the representations with respect to the purchase of the new equipment for the new facility, and the income projections based upon the purchase of the new equipment, were material to Ward and that he relied on these representations in making his decision to execute the agreement with HealthSouth regarding the purchase of MICO. *See,* First Amended Complaint, ¶ 11. Ward and CAW Imaging, P.C. allege that Scrushy caused and permitted these representations to be made to Ward knowing that they were false and knowing that HealthSouth would not invest the monies for the new imaging equipment and that the earning projections based upon the purchase of that equipment were therefore grossly inflated

and false.  *Id.*  Ward and CAW Imaging, P.C. allege that Scrushy knew and intended that Ward would rely upon the false representations and Ward did so rely.  According to plaintiffs, Scrushy and HealthSouth concealed their fraudulent conduct after the execution of the agreements by claiming to have ordered new MRI equipment and then later canceling the purchase orders due to an alleged breakdown in negotiations. Plaintiffs allege the concealment lasted well into 2002.  Plaintiffs further allege that the "temporary magnet" which was housed in a trailer in the parking lot was represented to Ward to be "temporary."  *Id.*, ¶ 13.

In addition to the promises of new equipment and corresponding revenue increases, Ward alleges that he relied upon the stated earnings of HealthSouth in reaching his decision to execute the agreements with HealthSouth.  The stated earnings were of material importance to Ward in determining whether HealthSouth would honor its promise to purchase the new equipment and in determining whether his prospective employer was financially sound.  *Id.*, ¶ 14.  Ward alleges, however, that in 1999 and 2000, the stated earnings of HealthSouth were overstated by billions of dollars as a result of a pervasive and elaborate scheme masterminded by Scrushy and carried out by senior officers and executives.  *Id.*, ¶ 15.  Senior officers and executives, prior to the end of each quarter, artificially inflated HealthSouth's earnings to match Wall Street's expectations.  *Id.*  Books and records were falsified by recording  phony entries with respect to various HealthSouth accounts.  *Id.*, ¶ 16.

In the First Amended Complaint, plaintiffs allege that the actions of  Scrushy constitute fraud and further allege that but for the materially false representations concerning the net worth of HealthSouth, the promises that in excess of $1.9 million would be spent for new equipment and the promises and representations as to projected income to be achieved through the purchase of state-of-the-art equipment, Ward would not have entered into the agreements with HealthSouth.    Ward and CAW Imaging, P.C., allege that in reliance on the misrepresentations of Scrushy,

Ward contracted with HealthSouth and as a result has lost certain lucrative business opportunities. Plaintiffs allege that Scrushy's misrepresentations have damaged plaintiffs in that Ward's actual earnings were far less than the projected earnings. Plaintiffs seek actual and punitive damages for the alleged fraud, together with a declaration that the non-compete agreement is void and rescinded. *See*, First Amended Complaint, ¶¶ 24-28.

Procedure for Motion and Burden of Proof

"The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction . . . ." Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992)(quotation omitted). Facts regarding jurisdictional questions may be determined by the district court by reference to affidavits, by a pretrial evidentiary hearing, or at trial when the jurisdictional issue is dependent upon a decision on the merits. *Id*. (citations omitted). When the district court, as in the case at bar, holds a pretrial evidentiary hearing to resolve factual disputes relating to jurisdictional questions, the plaintiff has the burden to prove facts supporting jurisdiction by a preponderance of the evidence. *Id*.

Lecia Pate Deposition

At the evidentiary hearing on Scrushy's renewed motion, plaintiffs sought to admit into evidence Exhibit 3, the April 6, 2005 deposition testimony of Alecia Louise Pate Willingham (a/k/a Lecia Pate), the former HealthSouth employee who was involved in the negotiations of the purchase of MICO. Transcript of Hearing on Personal Jurisdiction, October 4, 2005, pg. 25, ll. 18-20. Scrushy objected to the admission of the deposition testimony on the basis that it constituted hearsay. Scrushy argued that Fed. R. Evid. 804(b)(1) (former testimony hearsay exception) did not apply as plaintiffs had made no showing of Pate's unavailability and he was precluded, under the court's previous order staying the proceedings, from participating in the deposition. Plaintiffs countered that the deposition was admissible under Rule

804(b)(1) and under Rule 807.  As to Rule 804(b)(1), plaintiffs specifically argued Pate was unavailable in that she was beyond the subpoena power of the court and defendant Healthcare, who was Scrushy's predecessor in interest, was present at the deposition and had the opportunity to question Pate.  Although not agreeing with plaintiffs that as of April 2005, HealthSouth was the  predecessor in interest of Scrushy, the court concluded that a question remained as to whether something akin to virtual representation, if still viable under Rule 804, would support the admissibility of the deposition testimony, if the parties who were present and participating had the same opportunity and same motivation to challenge that testimony.  *Id.*, at p. 28, ll. 13-23.  The court therefore overruled Scrushy's objection and received Exhibit 3 into evidence, subject to a final conclusion as to whether there was sufficient basis for admitting the deposition testimony.  *Id.*, at p. 28, ll. 24-25,  p. 29, 1-3.  The court called for post-hearing briefs on the issue.  *Id.*, at p. 29, ll. 3-6, p. 147, ll. 2-9.

In their post-hearing briefs, plaintiffs have not presented any arguments to support admission of the deposition under Rules 804(b)(1) or 807.  Instead, plaintiffs argue that the deposition is admissible for two reasons: (1) Scrushy has waived any objection to the deposition because he offered the subject deposition in support of his renewed motion; and (2) the deposition is admissible under Fed. R. Civ. P. 32(a)(3)(B) because Scrushy was "present or represented at the taking of the deposition" and Pate was "at a greater distance than 100 miles from the place of" hearing.

Without any additional argument or citation of authority from plaintiffs, the court concludes that plaintiffs have failed to demonstrate that Pate's deposition testimony is admissible under Rules 804(b)(1) or 807.  The court again concludes that HealthSouth was not, in April of 2005, Scrushy's predecessor in interest, so as to come within the language of Rule 804(b)(1).  The court also finds that plaintiffs have not shown for purposes of Rule 807 that the deposition testimony was more probative on the point for which it was offered than any other evidence which plaintiffs could

procure through reasonable efforts and that the general purposes of the Federal Rules of Evidence and the interests of justice would best be served by admission of the deposition into evidence. *See*, Rule 807, Fed. R. Evid.

The court rejects plaintiffs' waiver argument. Although Scrushy cited the deposition in his renewed motion, the court, after reviewing the motion, called for the evidentiary hearing.[1] The court concludes that Scrushy did not waive his right to object to the use of the deposition, despite the fact that he had previously cited it in his motion. The court also does not agree with plaintiffs that Scrushy waived his objection on the basis that he used the deposition to an extent greater than necessary to rebut plaintiffs' evidence. The court concludes that once the deposition was received into evidence, Scrushy was able to use it in any way necessary to rebut the evidence of plaintiffs.

The court also rejects plaintiffs' Rule 32(a)(3)(B) argument. The court concludes that the "opportunity and similar motive to develop" requirement of Rule 804(b)(1) should be read into the rule. *See*, Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1019 (9th Cir. 2004); Clay v. Buzas, 208 F.R.D. 636, 637 (D.Utah 2002). Because Scrushy, through no fault of his own, did not have the opportunity to cross-examine Pate, the court concludes that the testimony should be excluded.

---

[1] It is worth noting here that the court, in the exercise of its discretion in determining the manner in which the factual issues presented by the jurisdictional challenge would be addressed (*see*, F.D.I.C. v. Oaklawn, above), chose to conduct an evidentiary hearing so that the matter would not be submitted on the basis of affidavits and other *ex parte* sources. Affidavits and other *ex parte* sources will often provide a factual record sufficiently reliable for resolution of a challenge to personal jurisdiction. However, as was noted at the hearing (tr. at 141), the present motion presents some "close and difficult" issues. In these circumstances, the higher quality record afforded by an evidentiary hearing, with its trial-like safeguards, can be especially helpful. It is for that reason that, at the hearing, the court advised counsel, in substance, that Mr. Scrushy's affidavit would not do him much good if he were not presented as a live witness. Tr. at 12 - 19. For the same reason, the court "set [the hearing] far enough out to provide [plaintiffs] an opportunity to do the discovery [they] needed to get ready for the hearing . . . ." *Id.* at 28.

Therefore, the final conclusion of the court, after further briefing, is that Exhibit 3 is inadmissible under Rule 802, Fed. R. Evid.

Court's Findings of Fact

At the evidentiary hearing, the court made some findings of fact based upon the evidence presented. These findings were as follows:

> . . . I do find that the transaction between HealthSouth and these plaintiffs, who obviously were the Oklahoma counterparts of HealthSouth, would not have gone forward as proposed without the approval of the Defendant Scrushy. It would have died at that point without his approval or it would have gone back to the deal people for more work. However, Mr. Scrushy's substantive contact with the proposed transaction was fleeting and superficial. He looked for the approvals of his subordinates and for the required percentage return.
>
> It can safely be assumed that he knew that the proposal was for a transaction with counterparts in Oklahoma, that the transaction would necessarily have involved substantial commitments by HealthSouth, that these commitments would have been highly significant to the Oklahoma counterparts in their decision to enter into a transaction with HealthSouth, and that the Oklahoma counterparts, these plaintiffs, would be relying on the representations that had been made to them by HealthSouth as to the viability and financial strength of HealthSouth.
>
> That much flows from the fact that Mr. Scrushy at least saw the blue file, looked for the things that he said he looked for, and signed off on it. But his substantive contact with the transaction was virtually nil. He had no contact with Mr. Ward or any other persons associated with the plaintiffs at any stage of the transaction.
>
> So as far as Mr. Scrushy's contact with this transaction is concerned, that, in the Court's view, is the sum and substance of the evidence.
>
> I am altogether unmoved by the testimony we've had back an forth about the checks. They were all written after the deal was entered into.

Transcript of Hearing on Personal Jurisdiction, October 4, 2005, p. 141, ll. 11-25; p. 142, ll. 1-16.

Although at the time of the hearing, the findings of fact were made with the Pate deposition in evidence, the court concludes that these findings of fact are still supported by the evidence in the record.

Specific Personal Jurisdiction

To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir.1995). Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry. Rambo v. American S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir.1988).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant "so long as there exist minimum contacts between the defendant and the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291(1980) (quotation omitted). The "minimum contacts" standard may be met in two ways. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998). First, a district court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "'if the defendant has "purposefully directed" his activities at residents of the forum,' and 'the litigation results from alleged injuries that "arise out of or relate to" those activities.'" Id. at 1091(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(other quotations omitted)). When the plaintiff's cause of action does not arise directly from the defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state. Id., (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 & n. 9 (1984)).

In this case, plaintiffs do not contend that the court can maintain general personal jurisdiction over Scrushy. Accordingly, the court must determine whether the court's exercise of specific personal jurisdiction over Scrushy offends due process. OMI Holdings Inc., 149 F.3d at 1091.

The specific jurisdiction inquiry is two-fold. OMI Holdings, Inc., 149 F.3d at 1091. Initially, the court must determine whether the defendant has such minimum contacts with the forum state "'that he should reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen, 444 U.S. at 297). Within this inquiry, the court must determine whether the defendant purposefully directed his activities at residents of the forum, and whether the plaintiff's claim arises out of or results from actions by the defendant that create a substantial connection with the forum state. Burger King, 471 U.S. at 472.

Next, if defendant's actions create sufficient minimum contacts, the court must still consider whether the exercise of personal jurisdiction over defendant would offend traditional notions of "fair play and substantial justice." Burger King Corp., 471 U.S. at 476 (quotation omitted). This inquiry requires a determination of whether the court's exercise of personal jurisdiction over a nonresident defendant is reasonable in light of the circumstances surrounding the case. Id. at 477-78.

Fiduciary Shield Doctrine

In his motion, Scrushy invokes the fiduciary shield doctrine, which precludes a court's exercise of personal jurisdiction over a defendant if personal jurisdiction is asserted entirely on the basis of actions taken by the defendant in his capacity as a corporate officer. McClelland v. Watling Ladder Company, 729 F. Supp. 1316, 1319 (W.D. Okla. 1990). It is undisputed that the actions upon which jurisdiction is based were performed by Scrushy in his capacity as chief executive officer of HealthSouth. In the October 4th hearing, the court indicated that it had serious misgivings as to whether the fiduciary shield doctrine survived Calder v. Jones, 465 U.S. 783, 790

(1984).  Transcript of Hearing on Personal Jurisdiction, October 4, 2005, p. 145, ll. 14-20.  Scrushy, in his post-hearing brief, contends that the doctrine is alive and well in this circuit, citing post-Calder published and unpublished decisions by the Tenth Circuit, specifically, Ten Mile Indus. Park v. W. Plains Serv. Corp., 810 F.2d 1518, 1527 (10th Cir. 1987), and Crowder v. Whalen, 1998 WL 8232 *2 (10th Cir. Jan. 12, 1998), and district court decisions, McClelland, *supra*., and Caldwell-Baker Co. v. S. Ill. Railcar Co., 225 F. Supp.2d 1243, 1262 (D. Kan. 2002).  The Caldwell case is the only case to discuss Calder, but in doing so, does not discuss the pertinent language which the court finds, as discussed below, to show that the constitution does not preclude the exercise of personal jurisdiction over a defendant based upon acts in his corporate capacity.

Despite Scrushy's arguments to the contrary, the court is still of the view that the doctrine is not viable in a jurisdiction, such as Oklahoma, which extends personal jurisdiction to the full reach permitted by the Due Process Clause of the Constitution. Federal due process does not preclude Oklahoma from exercising personal jurisdiction over a nonresident defendant who allegedly caused tortious injury in Oklahoma simply because the defendant was acting in a representative capacity.  In Calder, the Supreme Court stated that for purposes of federal due process an individual is not shielded from personal jurisdiction merely because that individual has acted in a fiduciary capacity on behalf of a corporation. In responding to petitioners' arguments that their conduct taken on behalf of their employer should not be considered in the minimum contacts analysis, the Supreme Court stated: "Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction." *Id*. at 790. *See also*, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13 (1984) ("[W]e today reject the suggestion that

employees who act in their official capacity are somehow shielded from suit in their individual capacity.").

In light of the Supreme Court's pronouncements in <u>Calder</u> and <u>Keeton</u>, in order for this court to recognize the fiduciary shield doctrine as a valid principle under Oklahoma's long-arm statute, this court must construe the statute as being more restrictive than federal due process requires. Such a construction, in the court's view, would run counter to the expansive interpretation that Oklahoma courts have consistently applied to Oklahoma's long-arm statute. <u>Conoco, Inc. v. Agrico Chemical Co.,</u> 115 P.3d 829, 834 (Okla. 2004) ("The intent of our long-arm statute is to extend the jurisdiction of the Oklahoma courts to the outer limits permitted by the Oklahoma Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.")(citing <u>Fields v. Volkswagen of America, Inc.,</u> 555 P.2d 48, 52 (Okla. 1976)).[2]   The court therefore concludes that the fiduciary shield doctrine does not apply to preclude personal jurisdiction over Scrushy. Therefore, the court will consider all forum-related contacts of Scrushy, even those taken in his fiduciary capacity, as to the specific jurisdiction inquiry.

<u>Minimum Contacts</u>

The act principally relied upon by plaintiffs in asserting that Scrushy is subject to personal jurisdiction is Scrushy's approval of the MICO transaction, evidenced by his signature on the April 1999 New Store/New Market analysis.[3]   The court recognizes, as pointed out by plaintiffs and conceded by Scrushy, that a single act may

---

[2]  Although the court, in <u>McClelland</u>, stated that it was "guided in its ruling by the fiduciary shield doctrine," 729 F.Supp. at 1319, the <u>McClelland</u> decision does not cite <u>Calder</u>, which was decided some six years earlier.

[3]Evidence was also presented during the evidentiary hearing of checks payable to Ward bearing Scrushy's stamped signature.  These checks were issued after the consummation of the MICO transaction.  The court concludes that these contacts are not related to plaintiffs' fraud claim and do not support the exercise of personal jurisdiction over Scrushy.

support personal jurisdiction, so long as that act creates a "substantial connection" with the forum state.  Burger King, 471 U.S. at 476, n. 18.  The Supreme Court, however, has also noted that "some single or occasional acts" related to the forum may not be sufficient to establish jurisdiction if "their nature and quality and the circumstances of their commission" create only an "attenuated" affiliation with the forum.  *Id*.  The court concludes that Scrushy's single act of approving the MICO transaction is not sufficient to establish personal jurisdiction over him.  As this court has found, Scrushy's contact with the subject transaction was "fleeting and superficial" and "virtually nil."  Transcript of Hearing on Personal Jurisdiction, October 4, 2005, p. 141, ll. 17-18, p. 142, l. 8.  The evidence at the hearing demonstrated that Scrushy played no role at all in the negotiations related to MICO's acquisition, which commenced with a cold call letter from Hal Truitt (Exhibit 12) in early 1997.  Scrushy did not author or send the letter (Exhibit 1)  which enclosed two offer options from HealthSouth relating to the acquisition of MICO.  Scrushy also made no oral representations to Ward and gave no marketing materials to him. Indeed, the record is clear that he had no personal contact with Ward.  Moreover, he had no conversations with Lecia Pate or any other HealthSouth employee regarding the details of the MICO transaction and did not give any instructions as to what to tell Ward or what to provide Ward regarding the purchase of MICO.  In addition, the New Store/New Market analysis signed by Scrushy in April 1999 was an internal document of HealthSouth.  It was signed by Scrushy in Alabama.  The analysis did not constitute a contract between Ward and HealthSouth.  The subject agreements were not executed until a year later.  Scrushy was neither a party nor a signatory to the agreements.  In preliminarily approving the MICO transaction, Scrushy's review was noticeably limited – he looked only for the required signatures of his subordinates and the required financial return.  While the court found that it was safe to assume that Scrushy knew substantial commitments were being made to the Oklahoma

-14-

counterparts and that the substantial commitments would be relied upon by the Oklahoma counterparts, the evidence demonstrates that Scrushy did not know the specifics of the MICO transaction.   The court cannot say that Scrushy created a substantial connection with Oklahoma by affixing his signature to the New Store/New Market analysis and cannot say that he purposefully directed his activities at Oklahoma.

The court concludes that LeDuc v. Kentucky Central Life Ins. Co., 814 F. Supp. 820 (N.D. Cal. 1992), and Dazey Corp. v. Wolfman, 948 F. Supp. 969 (D. Kan. 1996), cited by plaintiffs in support of personal jurisdiction, are distinguishable.   The defendants in each of those cases took specific action directed at the forum state. Those acts demonstrated that the defendants purposefully directed activities toward the forum state.  In LeDuc, the  president signed and sent a letter to policyholders in the forum state reassuring them that the company was financially stable.  LeDuc, 814 F. Supp. 820, 825-26.  In Dazey, the president, in addition to signing the contract and sending it to the forum state, initiated one or two telephone calls to the forum state to negotiate details of the contract.  Dazey, 948 F. Supp. at 974-975.  The defendants reached out to the forum state and  purposefully directed their activities to the forum state.  In comparison, in the case at bar, Scrushy did not reach out to plaintiffs.  He had no contact of any kind with them.  While Scrushy approved the transaction and his approval was necessary for the acquisition to occur, he did not "consummate" the transaction.  That did not occur until the subject agreements were executed a year later, in 2000.  The court cannot conclude that Scrushy's approval of the MICO transaction is sufficient to constitute minimum contacts.

The court also concludes that Calder does not support the exercise of personal jurisdiction over Scrushy.   In Calder, the defendant reporter and defendant president/editor committed intentional tortious acts expressly aimed at the forum state. Scrushy did not make any of alleged fraudulent misrepresentations to plaintiffs.  On

the evidence before the court, Scrushy cannot be considered a "primary participant" in the alleged wrongdoing which was intentionally directed at the Oklahoma plaintiffs. Calder, 465 U.S. at 790.  Even if it could be assumed from Scrushy's signature on the New Store/New Market analysis that he knew of, or was aware of, the alleged fraudulent misrepresentations, the court concludes that such knowledge or awareness is not enough to support the exercise of personal jurisdiction.  Am. Centennial Ins. Co. v. Handal, 901 F. Supp. 892, 898-899 (D.N.J. 1995)("Specific jurisdiction is inappropriate where there are not sufficient contacts to create general jurisdiction, and the only contention for specific jurisdiction is that an individual was aware of and approved of such alleged misrepresentations. Acquiescence, even if properly established, will not suffice.")

Plaintiffs maintain that Scrushy also participated in an overall fraudulent scheme to overstate the earnings of HealthSouth.  According to plaintiffs, Ward relied upon the alleged fraudulent misrepresentations regarding HealthSouth's net worth. Even assuming Scrushy did have a role in the alleged overall fraudulent scheme, the court finds that such conduct would not be sufficient to exercise personal jurisdiction. The alleged overall fraudulent scheme was not expressly aimed at Oklahoma.  Indeed, Oklahoma was not the focal point of the harm resulting from the overall fraudulent scheme.  In Calder, the forum state, California, was the focal point of the alleged libelous story and the harm suffered by the plaintiff.  Calder, 465 U.S. at 789. Moreover, the court concludes that Scrushy's awareness of this alleged fraudulent scheme at the time of approving MICO's acquisition would not support the exercise of personal jurisdiction.  Mere acquiescence in the tortious activity is not sufficient to create personal jurisdiction.   Am Centennial Ins. Co., 901 F. Supp. at 899.

In sum, the court concludes that plaintiffs have failed to demonstrate that Scrushy has sufficient minimum contacts with Oklahoma for the court to exercise specific personal jurisdiction over him.  The court therefore concludes that Scrushy's

motion should be granted and that plaintiffs' action against him should be dismissed without prejudice.

Accordingly, Defendant Scrushy's Renewed Motion to Dismiss for Lack of Personal Jurisdiction, filed September 13, 2005 (doc. no. 158), is **GRANTED**. Plaintiffs' action against defendant, Richard M. Scrushy, is **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(2), Fed. R. Civ. P.

Plaintiffs are **DIRECTED** to withdraw Plaintiffs' Exhibits 1, 1A, 2, 5, 11, 12, 17 and 22 admitted during the October 4, 2005 evidentiary hearing.  (The exhibits shall be preserved by counsel for plaintiffs for later inclusion in the record for the benefit of a reviewing court if that should become necessary.)  In addition, plaintiffs' Exhibit 3 is deemed withdrawn in light of the court's finding in this order that the exhibit was inadmissible.

Dated this 19th day of December, 2005.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

03-1564p040(pub).wpd