IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CLARK A. WARD, individually; and | ) | |
| CAW IMAGING, P.C., an Oklahoma | ) | |
| professional corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-03-1564-F |
| | ) | |
| HEALTHSOUTH CORPORATION, a | ) | |
| Delaware corporation; DIAGNOSTIC | ) | |
| HEALTH CORPORATION, a | ) | |
| Delaware corporation; and RICHARD | ) | |
| M. SCRUSHY, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court is HealthSouth Corporation and Diagnostic Health Corporation's Motion for Judgment as a Matter of Law, New Trial, and/or Remittitur, filed October 26, 2006 (doc. no. 292). Upon review of the parties' submissions in regard the motion, the court makes its determination.

The jury in this case returned a verdict in favor of plaintiffs on their breach of contract claim and their claim for fraud in the inducement relating to defendant, HealthSouth Corporation's financial position. The jury awarded actual damages in the amount of $993,474 on the contract claim and $1,814,054 on the fraud claim. The jury also awarded punitive damages in the amount of $250,000 relating to the fraud claim. Judgment was entered on October 12, 2006.

Defendants now request, pursuant to Fed. R. Civ. P. 50(b) and Fed. R. Civ. P. 59, a judgment as a matter of law, new trial and/or remittitur. In considering a motion

for judgment as a matter of law under Rule 50(b), the court views the evidence in the light most favorable to the prevailing party and gives that party the benefit of all reasonable inferences to be drawn from the evidence. Webco Industries, Inc. v. Thematool Corp., 278 F.3d 1120, 1123 (10th Cir. 2002). A party is entitled to a judgment as a matter of law "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1450 (10th Cir. 1997). In reviewing the record, the court does not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury. Deters v. Equifax Credit Information Services, Inc., 202 F.3d 1262, 1268 (10th Cir. 2000). Judgment as a matter of law in favor of defendants is appropriate only if "there is no legally sufficient evidentiary basis . . . [for a claim] under the controlling law." Mason, 115 F.3d at 1450 (internal quotations omitted).

In considering a motion for new trial under Rule 59, the court also views "all the evidence in a light most favorable to the prevailing party." Escue v. Northern OK College, 450 F.3d 1146, 1156 (10th Cir. 2006). "Where a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." Snyder v. City of Moab, 354 F.3d 1179, 1187 (10th Cir. 2003) (quotations omitted).

Initially, defendants challenge the jury's verdict in regard to plaintiffs' claim for fraud in the inducement relating to defendant, HealthSouth Corporation's financial position. To prove fraud under Oklahoma law, plaintiffs were required to establish (1) a material misrepresentation; (2) known to be false at the time made; (3) made with specific intent that a party would rely on it; and (4) reliance and resulting damages. Thrifty Rent-A-Car Systems, Inc. v. Brown Flight Rental One Corp., 24 F.3d 1190, 1195 (10th Cir. 1994). Defendants contend that the evidence at trial was

insufficient to establish a false material misrepresentation because any representation regarding HealthSouth's financial position was an expression of opinion and not a statement of existing fact. In addition, defendants assert that there was no evidence to support any contention that HealthSouth did not have the financial resources to operate the MICO facility. Moreover, defendants assert that there was no evidence that the larger accounting fraud at HealthSouth had any impact on the MICO facility or its operations.

In its order denying defendants' summary judgment motion, the court rejected defendants' "expression of opinion" argument. In so doing, the court specifically stated:

> Likewise, the court rejects defendants' contention in their reply brief that the alleged misrepresentation relating to the financial information constitutes "an expression of opinion." *See, e.g.*, Bird v. Coleman, 939 P.2d 1123, 1127 (Okla. 1997) ("'In a transaction involving the sale of stock in a corporation, representations as to the financial condition of the company ... the value of its stock ... made with the view to induce another to subscribe therefor, are representations of matters of fact ... and when relied upon by the purchaser of said stock, if false, constitute actionable fraud.'") (quoting Dalton v. Hopper, 177 P. 571, 573 (Okla. 1919)); *see also*, Dalton, 177 P. at 573 ("'A representation as to value is usually regarded as an expression of opinion, but, where false and made by one as an inducement to another, who is ignorant thereof, to enter into a contract, and is relied upon to the detriment of the latter, may be made the basis of an action for damages consequent upon fraud and misrepresentation.'") (quoting Hood v. Wood, 161 P. 210, 213 (Okla. 1916)); Hood, 161 P. at 213 ("'The financial condition of the company, the volume of its business, the amount of its income and expenses, and what these had been in the past were all matters peculiarly within the knowledge of the appellants, and not easily ascertainable by respondent. We have frequently held that representations as to such matters are representations as to matters of fact, and, if false, and made with knowledge that they were being relied upon by the other party, constitute actionable fraud.'") (quoting Boehme v. Broadway Theater Co., 157 P. 218, 219-220 (Wash. 1916)).

*See*, Order at pp 9-10 (doc. no. 130).  In the instant motion, defendants have not persuaded the court that its previous resolution of this issue was incorrect. Furthermore, viewing the evidence and all reasonable inferences in a light most favorable to plaintiffs, the court concludes quite easily that there was sufficient evidence in the record to establish material misrepresentations relating to HealthSouth's financial position.

Defendants additionally contend that the evidence presented at trial was insufficient to establish a causal nexus between HealthSouth's alleged overstatement of its financial position and either (a) any material reliance thereon by plaintiffs or (b) any injury suffered by plaintiffs.  The court, however, concludes that there was sufficient evidence in the record for the jury to find reliance, causation and injury in regard to plaintiffs' fraud claim.  The court specifically rejects defendants' arguments in this regard.

Next, defendants argue that the jury should have been permitted to consider their estoppel defense in regard to plaintiffs' fraud claim.  According to defendants, there was evidence at trial that plaintiff Ward made specific inquiries of HealthSouth's employees concerning negative reports of HealthSouth's financial position and that despite his awareness of HealthSouth's financial position, plaintiff Ward chose to continue working at the MICO facility.  Given the evidence that plaintiff Ward continued to accept the benefits of the parties' contract despite his awareness of HealthSouth's financial position, defendants contend that it was error for the jury not to consider whether plaintiffs were estopped from asserting their fraud claim.

"Under federal law, a jury instruction must be supported by sufficient competent evidence, direct or circumstantial, to permit a jury finding based on the instruction."  Holt v. Deere & Co., 24 F.3d 1289, 1294 (10th Cir. 1994).  "A 'mere

scintilla' of evidence will not support an instruction." *Id*. At the conference held in regard to jury instructions, the court rejected defendants' proposed estoppel defense instruction on the basis that the evidence, in the court's estimation, fell far short of the quality required to submit such instruction. The court concluded that plaintiff Ward did not have, at the times relevant to the alleged estoppel defense, the quality of knowledge that would have permitted a reasonable jury to resolve that issue in favor of defendants. Defendants, in the instant motion, have not convinced the court otherwise. The court concludes that it did not err in failing to submit the estoppel defense for the jury's determination.

Defendants next challenge the sufficiency of the evidence to support the jury's verdict in favor of plaintiffs on the breach of contract claim. According to defendants, the evidence at trial showed that they complied with the terms of the operative agreements. Defendants maintain that the evidence presented does not support any finding that they breached the operative agreements.

As plaintiffs point out in their response, defendants have devoted only a single paragraph to their challenge. The reason for this is clear. There is no question that the jury's verdict as to plaintiffs' breach of contract claim was well supported by the evidence at trial. The court therefore rejects defendants' challenge as to the sufficiency of evidence in regard to the breach of contract claim.

In addition, defendants argue that they are entitled to judgment as a matter of law, new trial, and/or remittitur as a result of plaintiffs' reliance upon the "out-of-pocket" theory of damages for their fraud claim. Defendants contend that plaintiffs could not recover out-of-pocket damages, a rescission-based remedy, for their claim because plaintiffs affirmed rather than rescinded the subject agreements and Oklahoma law only permits the recovery of "benefit-of-the bargain" damages for fraud claims. The court has previously considered and rejected defendants' position.

The court concludes that its prior ruling was correct and declines to grant any relief to defendants on this basis.

Defendants additionally contend that even if plaintiffs' fraud damages could be measured using the out-of-pocket theory of damages, the evidence was not sufficient to support the damages actually awarded. Defendants contend that the sole evidence offered by plaintiffs with respect to damages for the fraud claim was the testimony of plaintiffs' expert witness, David Payne. According to defendants, Mr. Payne calculated the fraud damages by comparing the potential income that could have been experienced by MICO between April 28, 2000 and December 31, 2004 with plaintiff Ward's actual income. However, according to defendants, Mr. Payne used differing standards for estimating potential income and actual income for purposes of comparing potential income with actual income. Specifically, defendants assert that Mr. Payne calculated the potential income by including not just income plaintiff Ward could have made from MICO, but plaintiff Ward's total income for radiology readings from any source. They argue that Mr. Payne's calculation of the actual income did not include the income which Dr. Ward earned from sources other than MICO. Defendants contend that in order to avoid an erroneous calculation of damages, the scope of income considered for potential income, "the minuend," must be consistent with the actual income, "the subtrahend." Defendants contend that Mr. Payne artificially inflated his calculation of fraud damages by employing a more restrictive interpretation of actual income, the "subtrahend." Defendants contend that Mr. Payne's testimony should have been excluded as unreliable under Fed. R. Evid. 702 and that such testimony was insufficient to support the jury's verdict as to fraud damages.

Although, according to defendants, this issue was addressed during cross-examination of Mr. Payne, the issue was not raised for the court's consideration

during trial by a contemporaneous objection or at the <u>Daubert</u> hearing in regard to Mr. Payne's testimony.   Assuming that this asserted defect in plaintiffs' damage calculation was covered in cross examination, that does not suffice as a substitute for a timely <u>Daubert</u> challenge or other appropriate means of seeking a curative ruling at a stage at which the matter could have been addressed and remedied, if need be, without trying the case again.  In any event, the court rejects defendants' arguments and concludes that the damage award for the fraud claim was supported by sufficient evidence in the record.

Next, defendants contend that damages for both plaintiffs' fraud and contract claims should have been limited, based upon the evidence in the case, to the period of April 28, 2001 to April 28, 2002.  Defendants contend that plaintiffs are not entitled to any damages attributable to any period prior to April 28, 2001 because there was no evidence that plaintiff Ward was harmed prior to that date.  Defendants also contend that plaintiffs are not entitled to any damages after April 28, 2002 as that was the date that the subject agreements were terminable by either party.  The court has previously addressed this issue and rejected defendants' arguments.   The court concludes that the time period utilized for both plaintiffs' fraud and contract claims was proper.

Defendants also argue that the evidence was insufficient to permit recovery of damages relating to the "non-competition" period.   Defendants contend that any continuing obligations for the post-April 28, 2003 period under the non-compete provisions of the subject agreements were separate obligations as to which defendants met all their contractual requirements.  Defendants maintain that plaintiffs cannot recover contract damages in the absence of a breach of the non-compete provisions. In addition, defendants contend that plaintiffs cannot recover damages for the non-competition period because they failed to honor the non-compete provisions and they

failed to present evidence demonstrating that they were damaged as a result of the non-compete provisions.  Defendants also assert that even if plaintiffs are entitled to damages attributable to the non-competition period, such damages can be recovered only for April 28, 2003 through April 28, 2004.

The court has previously addressed and rejected defendants' arguments relating to the non-competition period.  The court concludes that the evidence was sufficient to support a damage award for the non-competition period and that the evidence was sufficient to support a damage award for the period after April 28, 2004.  The court further concludes that the standard for damages relating to the non-competition period was correctly stated in the jury instructions.

In addition, defendants assert that Mr. Payne, plaintiffs' expert witness, miscalculated the awardable damages for the non-competition period.  Specifically, defendants contend that Mr. Payne overstated Dr. Ward's actual average monthly income for the period by $12,197 per month, as a result of switching from a cash basis to an accrual basis in calculating income.

Although defendants may have challenged Mr. Payne's calculations through their counsel's cross-examination, they made no contemporaneous objection in regard to the reliability of Mr. Payne's testimony.  As previously noted, where, as here, defendants gave the court nothing to address at or before trial, there is no occasion for post-trial relief.  Nevertheless, the court, addressing the issue on the merits, concludes that  defendants have failed to show that Mr. Payne erroneously overstated damages during the "non-competition" period.

Defendants further contend that the court erred in failing, prior to submission of the case or prior to judgment, to require plaintiffs to elect either (1) to affirm the subject agreements with defendants and have judgment entered on the jury's verdict on plaintiffs' breach of contract claim, or (2) to rescind the subject agreements and

have judgment entered on the jury's verdict on plaintiffs' fraud claim.  Defendants contend that an election was required under the authority of Whatley v. Crawford & Co., 15 Fed. Appx. 625 (10th Cir. 2001) (unpublished), because plaintiffs' remedies for the fraud and contract claims were inconsistent.

The court previously addressed the election issue in its Memorandum of October 12, 2006 (doc. no. 288) denying defendants' motion to require an election of remedy.  The court remains convinced that no election was required under the particular facts and circumstances of this case.  The court therefore concludes that the election of remedies issue was correctly resolved at and after trial.

Next, defendants contend that a new trial is required based on what they assert was plaintiffs' counsel improper reference in closing argument as to this court's denial of defendants' Daubert[1] motion relating to Mr. Payne, and the court's failure to give a limiting instruction.  The court notes that while the defendants requested an additional limiting instruction after closing argument, they made no contemporaneous objection to counsel's reference to the court's denial of defendants' Daubert motion. Nevertheless, the court concludes that the reference to the denial of defendants' Daubert motion was not improper.  As plaintiffs point out, defendants, during cross-examination, questioned Mr. Payne about a quarterly newsletter published by  D.R. Payne & Associates, Inc.   In one of the articles in the publication, Mr. Payne wrote about the standards for expert testimony and expert opinions under Daubert and Kumho.[2]  Defendants plainly sought to suggest that Mr. Payne's damage calculations did not satisfy the Daubert standards as discussed in the newsletter.  Counsel for defendants read the pertinent portion of the newsletter to Mr. Payne – a passage

---

[1]  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

[2]  Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137 (1999)

which, as read to the witness and the jury by defendants' counsel, included express references to <u>Daubert</u> and <u>Kumho</u>. Defendants thus swung that door open with a loud clang. Consequently, assuming that a response, by plaintiffs' counsel, making reference to the court's <u>Daubert</u> ruling, would otherwise have been inappropriate, the doctrine of curative admissibility (*e.g.*, <u>United States v. Forrester</u>, 60 F.3d 52, 60 (2d Cir. 1995) and <u>United States v. Martinez</u>, 988 F.2d 685, 702 (7th Cir. 1993)) permitted plaintiffs to set the record straight both as a matter of evidence and as a matter of argument. Thus, plaintiffs were properly permitted to show on redirect examination that the court had denied defendants' <u>Daubert</u> motion attacking Mr. Payne's damage calculations. Although this may have been hard-hitting trial advocacy on the part of plaintiffs' counsel, it was invited by defendants and was not unfairly prejudicial. It should also be noted that the court did give a limiting instruction immediately after Mr. Payne's trial testimony was completed. It was not unfairly prejudicial for plaintiffs, in closing argument addressing defendants' challenge to Mr. Payne's damage calculations, to again point out that the court had denied defendants' <u>Daubert</u> motion. The court further concludes that it was not error to deny defendants' subsequent request for an additional limiting instruction.

Defendants next argue that the court erred in admitting the testimony of Mr. Payne and the testimony of plaintiffs' additional expert witness, Irwin Steinhorn. Defendants maintain that the testimony of these expert witnesses did not meet the standards of Fed. R. Evid. 702, as interpreted by <u>Daubert</u>.

As to Mr. Payne, defendants assert that his testimony should have been excluded because (1) he failed to consider other possible causes for plaintiffs' injuries (a 70% increase in competition in Oklahoma City market, the cost of improvements or of new radiology equipment for the facility, the decline in reimbursement rates in the market for radiology services, the restrictions on the number of contracted

facilities being applied by insurance companies that operated within the market and a number of other alternative causes); (2) he relied solely upon HealthSouth's educated guess concerning MICO's financial future; and (3) he committed numerous errors as to both the methods employed and the calculations made to reach the damages figures he proposed to the jury at trial.

At the <u>Daubert</u> hearing held in regard to Mr. Payne, the court stated:

[T]he main issue before the Court is whether Mr. Payne uncritically and without justification accepted the assumptions underlying the New Store New Market analysis, and in so doing whether he failed to consider other data, some of which was generated later which would render either his assumptions or other aspects of his methodology unacceptably unreliable.

The Court finds that Mr. Payne did not uncritically accept the assumptions in the New Store New Market study.  His testimony undercuts the contention that he slavishly adopted the New Store New Market study.

He tested those assumptions against extrinsic criteria, including industry data, to arrive at a conclusion as to whether those assumptions are within the range of reasonable assumptions viewed in light of the data existing both at and after the date as of which the data underlying the New Store New Market analysis were generated.

The Court finds that Mr. Payne did in fact consider the factors cited  by the defendants, specifically the effect of increased competition, the trend in reimbursement rates, and possible shifts in provider contracting practices.  In this regard, Mr. Payne was aided by and did draw upon his considerable experience in evaluating the economics of health care provider operations.  We do not have here the mere ipse dixit of the expert.

* * * *

For Daubert/Kumho purposes, what is necessary is that it be established that his methodology is not fatally undercut by the assumptions he used

or by his failure to consider other factors which could not reasonably be disregarded.  And I find that Mr. Payne's work in this case does clear that threshold.

Transcript of Hearing on Daubert Motion, January 24, 2006, p. 143, ll. 20-25, p. 144, ll. 1-19, p. 145, ll. 11-15.

The court, upon due consideration, concludes that its previous ruling as to Mr. Payne was correct.  The court further concludes that Mr. Payne's testimony should not have been excluded on the basis of any other grounds raised by defendants.

As to Mr. Steinhorn, defendants contend that his testimony should have been excluded because it consisted of his view of the applicable law and his opinion that defendants' conduct violated the law.  Defendants argue that under relevant case authority, an expert's testimony which concerns the law and the application of that law to the facts of the case to determine whether a defendant's conduct violated the law is not helpful to the jury and is prejudicial.

The court initially addressed the challenged testimony of Mr. Steinhorn in its order denying defendants' Daubert Motion to Exclude Testimony of Plaintiffs' Expert Witness Irwin H. Steinhorn, filed January 4, 2006 (doc no. 193).  At the outset, the court concluded that defendants' motion was not a Daubert motion.  The court treated defendants' motion as a garden-variety motion in limine on the principles articulated in Specht v. Jensen, 853 F.2d 805 (10th Cir. 1988).  Upon review of the motion, the court concluded that the motion did not lend itself to in limine rulings.  The court concluded that the line between admissible and inadmissible legal expert testimony could not be drawn in any meaningful way in advance of trial.  However, the court provided the parties and their counsel with general guidance as to how Mr. Steinhorn would be permitted to testify at trial.

At trial, defendants objected to Mr. Steinhorn's testimony relating to the application of securities laws with regard to HealthSouth's publicly issued financial statements. The court, after hearing defendants' specific arguments, overruled the objection. The court concludes that its evidentiary ruling in regard to Mr. Steinhorn's testimony was correct.

Defendants further assert that evidence was insufficient to support the jury's verdict awarding plaintiffs $250,000 in punitive damages. Defendants reiterate their previous argument that the evidence fails to support the fraud claim. They assert that the evidence does not support a finding that defendants acted intentionally or maliciously to defraud plaintiffs.

The court has previously rejected defendants' challenge to the sufficiency of the evidence supporting the fraud claim. As to whether the evidence supports a finding that defendants acted intentionally or maliciously to defraud plaintiffs, the court notes that the jury actually rendered a verdict finding "by clear and convincing evidence that defendants HealthSouth Corporation and Diagnostic Health Corporation, *acted in reckless disregard* of the rights of plaintiffs, Clark A. Ward and CAW Imaging, P.C., in committing the fraud at issue in this claim." *See*, Verdict Form (doc. no. 264) (emphasis added). The court concludes that there was sufficient evidence to support a finding that defendants acted in reckless disregard of the rights of plaintiffs in committing the fraud relating to HealthSouth's financial position. Furthermore, the court concludes that under the particular facts of this case, the amount of punitive damages awarded is not excessive. To the contrary, the jury set the punitive damage recovery in an amount which was indicative of restraint and of a temperate approach to evaluation of the fraud which was plainly shown by the evidence. Therefore, no remittitur is required.

Finally, defendants incorporate by reference their previously filed motion submitted pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law and reassert those arguments to the extent they were not made in defendants' instant motion.  As no additional specific arguments have been advanced, the court concludes that defendants are not entitled to judgment as a matter of law for any reason not stated in the instant motion.

Accordingly, HealthSouth Corporation and Diagnostic Health Corporation's Motion for Judgment as a Matter of Law, New Trial, and/or Remittitur, filed October 26, 2006 (doc. no. 292) is **DENIED**.

ENTERED this 27th day of February, 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

03-1564p075.wpd